No. 27,311.

J. W. HUNT, *Appellee,* v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

MASTER AND SERVANT — *Liability for Injury to Servant — Assumption of Risk.* The proceedings considered, and *held,* an interstate railway employee, assisting in loading bad-order car wheels into a flat car, assumed the risk of an injury which he sustained.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed April 9, 1927. Reversed.

*W. P. Waggener* and *J. M. Challiss,* both of Atchison, for the appellant.
*C. A. Matson* and *I. H. Stearns,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by an employee of a railroad company against the company for damages for personal injury negligently inflicted. Plaintiff recovered, and defendant appeals.

Master and Servant, 39 C. J. p. 1101 n. 80.

Bad-order car wheels would accumulate in defendant's yard, and it was necessary to. remove them. Wheels were in pairs, rigid on a connecting axle which protruded to form a journal on the outside of each wheel. A flat car would be placed on a track to receive them. The wheels would be rolled by hand on a dummy track to a position alongside the flat car, and would be picked up by a crane and placed in the flat car. In this instance, the crane was of the clamshell type, with heavy chains with loops in the ends hanging from the bucket. The dummy track was practically level, but by "giving the wheels a run" and then "turning them loose," they would roll quite a distance. Two men worked together in bringing wheels to the flat car. They would go into the yard together, and each would bring down a pair of wheels. The pair in the lead would be stopped in position for loading, and the rear pair would be stopped back of the other. The chains would be lowered, the .man in charge of the front wheels would place the loop in the end of one chain about the left-hand journal, the man in charge of the rear wheels would go forward and place the loop in the end of the other chain about the right-hand journal, and the crane would lift that pair of wheels into the flat car. The chains would again be lowered, and would be adjusted to the journals of the second pair of wheels, and the men would return to the yard for more wheels.

Plaintiff was a truck man, whose duties were to put in brake beams, put in car springs, put on car wheels, and do whatever was needed about trucks. While plaintiff and Ed Stancer were at work changing a brake beam on a car, they were directed by the foreman to load car wheels. Plaintiff testified he had never before loaded car wheels. Stancer testified he and plaintiff had previously worked together loading car wheels. The foreman under whom plaintiff worked testified he used truck men and all sorts of labor to load car wheels, and was of the opinion plaintiff had previously served in that capacity. Plaintiff admitted there was nothing technical or complicated about that work, it was a laborer's job, he had seen it done repeatedly, and any sixteen-year-old boy could do it.

Stancer brought down the first pair of wheels, and plaintiff followed with another pair. These wheels were loaded, and the work was prosecuted in the usual manner until, according to the testimony of the foreman, the flat car, holding twenty pairs of wheels, was filled with the exception of one or two pairs. According to Stancer, the car held twenty pairs of wheels, and he was bringing

down the last pair when the accident occurred. Plaintiff did not know how many pairs had been loaded when he was hurt, but thought the number might be ten or twelve. In any event, the work had progressed for some time, and plaintiff said it required no skill or experience or book-learning or any particular knowledge to understand the wheels were heavy, would roll on the dummy rails, and would pinch a man's leg if it were caught between two wheels.

If one pair of wheels came in contact with another pair, the flanges would strike, and the diameters of the wheels were such that the axles would be held apart so a man could safely stand between them. A man was safe if he stood outside the dummy rails, and the only way he could get pinched was by standing astride one rail.

Plaintiff brought down a pair of wheels ahead of Stancer, Stancer's pair followed, plaintiff straddled the left rail of the dummy track, and his leg was caught between the left wheels of the two pairs. Plaintiff did not testify to the facts of the accident. He did not describe his movements from the time his wheels stopped under the bucket of the crane until he was injured. He did not know whether he had put the chain on the journal of the wheel on his side, or was in the act of putting the chain on the journal, or was waiting for the chain to be lowered, when he was injured. His best guess follows:

"I was in the act of chaining my end of the wheel, or was looking up, one or the other. The best I can figure it out, I must have stepped back to get out of the way of that chain swinging; . . . As it was coming down it was swinging around all over, but you just grabbed it and put it on.

"I think Ed [Stancer] was over at the east side of that pair of wheels, and I was on the west-hand side where I should have been to hook the loop on this outside journal. I stepped back upon the rail and got pinched, to get out of the way of that chain that was swinging."

Afterward plaintiff said that immediately upon being pinched he saw Stancer standing back by the shed out of which the wheels were rolled. When his attention was directed to the discrepancy between his statements relating to Stancer's position, he said Stancer was supposed to be there to chain his side. Plaintiff was then asked if he did not know wheels were likely to come out of the shed and along the track at any time. He avoided direct answer by saying: "Well, I and Mr. Stancer had worked together quite awhile." He was pressed for an answer to the question as follows:

"Q. You knew wheels were liable to come along this track at any time, and you didn't see Ed, did you?"

His answer was, "No, not at any time, I didn't." He did not say he did not know Stancer's wheels were likely to come down when he brought down wheels ahead of Stancer. Near the close of plaintiff's cross-examination the following occurred:

"Q. Then if you were going to try safety first, why didn't you look up the tracks in the direction from which these wheels rolled, before you stepped on the track. A. Sometimes you can, and sometimes you can't.

"Q. You didn't happen to take time this time. I want you to look this jury right in the eye, and tell them, if you can, any place where the Missouri Pacific Railroad Company, Ed Stancer, or Mr. Ford, or anybody is at fault for your accident. A. Well, I lay the fault for the simple reason that they called us off of our job, and put us on a job we wasn't used to working on."

That was not the ground of negligence charged in the petition, and on redirect examination plaintiff's counsel was obliged to ask him twice for other reasons for holding defendant responsible, before he remembered no warning was given him before he was hurt. He testified, however, that just as the wheels came together he heard a voice yell "Joe," his given name.

The engineer testified plaintiff and Stancer went to the shed for wheels. While they were getting the wheels he swung the crane around so the bucket hung over the dummy track. The bucket was ten or twelve feet above the track, and the chains hung four or five feet below the bucket. Plaintiff's wheels came out of the shed first, and when his wheels got down about even with the bucket, he was standing in the middle of the track between the two car wheels. Either then or a little later he stepped from between the rails. Stancer's wheels were then coming, and the engineer, Stancer and the foreman called to plaintiff. Plaintiff brought his leg around crosswise of the rail, and when Stancer's wheels reached him he was astride the rail. The chains had not been lowered, and the engine was silent.

The wheels were rolled toward the north. Stancer testified he and plaintiff went to the south part of the yard, and each got a pair of wheels. Plaintiff was ahead, and Stancer slowed up so plaintiff would keep ahead. Stancer released his wheels probably thirty feet from plaintiff, and followed probably ten feet behind them. He was probably ten feet from plaintiff when the wheels struck plaintiff. Stancer said when he released his wheels he called

"Look out, Joe," as he always did, so the man in front would not step across the rail. Plaintiff jumped from one side of the rail to the other, and finally stood astride the rail, with his back toward Stancer, looking up. The engine was not in operation, and the chains were not coming down. Stancer called a second and a third time, but plaintiff did not move, and the left wheel of Stancer's pair caught him. Stancer testified that toward the last of the loading one of the clamshell men would help chain one end of a pair of wheels, but no witness testified to the presence of any one at the right hand of plaintiff's pair when plaintiff was injured, and plaintiff testified Stancer was there, or was supposed to be there, as each fellow helped the other chain the wheels.

The petition alleged that without warning Stancer released his wheels, and that releasing the wheels without warning constituted negligence. The answer denied negligence, and pleaded contributory negligence and assumption of risk on the part of plaintiff. The court instructed the jury as follows:

"If the plaintiff was engaged in the regular line of his employment, and the dangers incident to such work were open to common observation, and were as fully known to him as to the defendant, and he was as capable of knowing and measuring the dangers of such employment as was the defendant, and if his injuries, if any, were sustained in the course of his employment, then you are instructed that the plaintiff assumed the risk, and cannot recover.

"If you find from the evidence that just prior to the plaintiff's injury he was occupying a place of safety in relation to the rolling wheels, and he had no duty to perform at the time which required that he should step upon the track occupied by the rolling wheels, and for some purposes of his own, carelessly and negligently stepped upon a rail upon which a pair of car wheels was rolling in the direction of plaintiff, and plaintiff received the injury complained of, then plaintiff assumed all the risk of so exposing himself to danger, and your verdict must be for the defendant."

With a general verdict for plaintiff, the jury returned the following special findings of fact.

"1. Q. Would the plaintiff have been hit by the rolling car wheels if he had stood between the rails of the dummy track, or between the parallel tracks far enough from the rail of either track to clear the wheels? A. No.

"2. Q. What duty did plaintiff have to perform for the defendant at the time he stepped upon the rail and received his injury? A. None.

"3. Q. If you find any negligence against the defendant, then state in what such negligence consisted. A. In turning wheels loose without giving proper warning.

"4. Q. If you find any negligence against the defendant, then state the name of the servant or agent of the defendant responsible for such negligence. A. Ed Stancer.

"5. Q. If you find any negligence against the plaintiff, then state in what such negligence consisted. A. Plaintiff was not sufficiently alert nor cautious as to the danger of the work.

"6. Q. How much, if any, do you reduce the plaintiff's recovery on account of his negligence? A. About 50 per cent.

"7. Q. Was the plaintiff's injury the result of one of the common and ordinary accidents inherent in his employment, and for which no one in particular was to blame? A. No.

"8. Q. What could the plaintiff have done, if any thing, which would have prevented the accident? A. Remained between the rails.

"9. Q. Were the car wheels in question handled in the common and ordinary manner? A. In part.

"10. Q. If you answer the last preceding question 'No,' then state wherein the handling of the car wheels in question was different from the common and ordinary manner in performing that work. A. Ed Stancer neither followed his wheels nor gave proper warning.

"11. Q. What did the plaintiff do, if anything, which made the accident possible? A. Changed his position."

Defendant is an interstate carrier, and neither party makes any complaint of the instructions given the jury, which correctly stated the federal law applicable to the case.

The petition alleged the company was short of help, and the accident would not have occurred if the necessary number of employees had been present. The court withdrew that charge of negligence from the jury. There was no allegation in the petition that the company was negligent because plaintiff was changed from familiar to unfamiliar work, and the jury gave no heed to plaintiff's testimony on that subject.

Releasing wheels was a proper practice, recognized by the findings of the jury. There was no allegation in the petition and no proof that the man behind was required to follow up released wheels in order to protect the man in front, or that Stancer was negligent in not following his wheels. The sole pleaded charge of negligence which was submitted to the jury was that Stancer was negligent in releasing his wheels without warning. The jury did not find Stancer was negligent in releasing his wheels without warning. Warning was given, and plaintiff admitted he heard his name shouted. When asked to specify wherein defendant was negligent, the jury replied Stancer was negligent in releasing the wheels without giving

."proper" warning. (Findings 3 and 4.) Therefore, the jury's reference in finding No. 10 to Stancer's not following up his wheels, was outside the issues and the evidence, and may not be considered as a basis of liability.

All the evidence on the subject was that the dummy track was practically level. There was no evidence relating to velocity of Stancer's wheels when he released them, or at the time they came in contact with plaintiff's leg, and no evidence that after the wheels were released their velocity either increased or diminished.

When plaintiff brought down wheels ahead of Stancer, he knew Stancer was somewhere behind him with wheels which might be released, and no general duty on the part of Stancer to warn plaintiff that Stancer was behind him with wheels which might be released, was established. The office of warning was to protect the man in front while he was engaged in performance of duty which properly occupied his attention. There was no duty to warn in order to forestall negligent movements.

Plaintiff was required to do two things: bring down wheels, and place the loop of a chain about the wheel journal. Waiting for the chain to descend was included in duty to chain the wheel. Plaintiff was exposed to two hazards: being struck by a swinging chain, and being caught between two wheels. The risk of being caught by chains dangling from the bucket was one which plaintiff assumed. It inhered in the employment, and he was obliged to protect himself. If, while plaintiff and Stancer were going to the south part of the yard for wheels, the engineer placed the bucket above the dummy track, so that when the first pair of wheels was brought beneath it the chains were merely lowered, this risk was necessarily slight. The chains would merely descend. In adjusting the crane to lift the second pair of wheels, the chains would swing, and the risk was doubtless greater.

As indicated above, plaintiff did not know whether chains were in fact swinging when he was hurt. The positive testimony was that they were not. There was no evidence on the subject of how quickly chains would be lowered after arrival of the first pair of wheels. They could not come down until the engine was started. The engineer testified that operation of the engine made considerable noise, and noise of the engine was fair warning to look out for descending chains.

With respect to approaching wheels, there were two safe places

for plaintiff to stand while waiting for chains to be lowered: between the dummy rails, and outside the left dummy rail. The only dangerous place was astride the dummy rail. Plaintiff would not have been struck if he had occupied either of the safe places (finding No. 1), and whatever the circumstances may have been, he could have avoided the accident by standing between the rails (finding No. 8). He changed his position from a place of safety to one of danger, and so made the accident possible (finding No. 11). He did not do this of necessity created by progress of the work. He was not performing any duty when he stepped over the rail and received his injury (finding No. 2). He did so through negligence (finding No. 5), and he assumed the risk of injury arising from his own lack of alertness and caution.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for defendant on the findings of fact.

JOHNSTON, C. J., HARVEY and HOPKINS, JJ., dissenting.